HARRIS, J.,
concurring and concurring specially:
While I agree that this matter must be reversed, I believe we should address the implicit ruling made by the trial court in *756 granting Ackley’s demand for a hearing on the “charges.” The implicit ruling is that the City’s charter prohibits the City from entering into an “at will” employment agreement with a city manager who serves in excess of six months.
This appeal involves the claim that the City improperly discharged, or perhaps discharged in an improper manner, its city manager, Ackley. The trial court entered a Final Judgment on Ackley’s complaint for mandamus requiring the City to hold a due process hearing before terminating Ackley. The City appeals; we reverse.
The case becomes less complicated if we take it step by step.
First, the Charter provision:
The council shall appoint the city manager for an indefinite term and may remove him by a majority vote of its members. If removed at any time after having served six (6) months, the city manager may demand written charges and a public hearing upon the same before the council, and his removal shall not take effect until such hearing has been had, but the council may suspend him from office pending such hearing.
Does this provision mean that the City may not enter into an “at will” contract specifically reserving the right to terminate the city manager without cause? Or does it merely mean that if the City elects to discharge the city manager “for cause,” he is entitled to written charges and a hearing on them? Or, perhaps there is a third alternative. Could this “right” to written charges, while recognizing the at will employment status, include the right to have the City specify in writing that it is terminating the city manager for no cause and provide a hearing at which the City must prove its lack of reason? I reject the third alternative.
Both parties to this negotiated employment contract construed this provision to mean that charges and a hearing are only implicated when the cify manager is terminated for cause. Admittedly, the charter provision is not crystal clear. On the one hand, the charter provision might be interpreted to establish a probationary term after which the city manager may be discharged only for cause. However, the first sentence of the charter provision places no “for cause” limitation on the City’s authority to terminate its city manager as one would expect if such a limitation was intended. Because the charter provides for an “indefinite term,” it is doubtful that it was intended to bind successive councils with a city manager with whom they were uncomfortable just because the manager breaks no rules or commits no infractions of law. It thus seems more reasonable, and recognizes a much better public policy, to construe the charter provision relating to charges and a hearing to apply only if the City relies on charges for termination.
Second, the employment contract terms: It is understood that the City Council does have the authority and discretion to terminate the Employee at any time subject to Sections 3.A and 3.B of this agreement.
Section 3.A establishes a schedule for severance benefits if the termination takes place during a time the city manager is willing and able to perform his duties, but provides that there will be no such benefits if the city manager is terminated for committing an “illegal act.” [1] Section 3.B provides that the city manager, at his option, may consider himsélf “terminated” if the City does certain things, such as reduce his salary.
*757 Thus the employment contract negotiated between the parties clearly contemplates that the City may, if it is willing to pay severance benefits, terminate the manager at any time without cause.
Third, the reason for the termination. While neither the minutes of the council meeting at which the termination occurred nor the original letter confirming such termination is in the record, the official reason is apparent from the letters between the parties which are in the record. Ack-ley was terminated because the council lacked a “comfort level” with the city manager and desired a “change of direction.” Neither of these reasons “charge” Ackley with any wrongdoing. The reasons are purely subjective with the council and are within the discretion contemplated by the employment contract. It is a “without cause” termination. A hearing at which the City must allege charges, and justify them, when it is exercising its discretion to terminate without cause is thus contrary to the agreement negotiated by the parties and is unjustified in this case.
Ackley agreed that if there are no charges, there is no requirement for a hearing. In fact, his demand for a hearing was conditional for that reason. In his initial letter to the council after his termination, Ackley was not concerned about the official reason for terminating him or the City’s authority to so discharge him. He was only concerned about the “innuendo and phantom charges” that certain council members must have voiced. Again, the minutes of the meeting are not in the record but Ackley states in his letter of April 27, 1999: “The reasons given of not having a comfort level or changing direction are reasonable. The innuendo that there was wrong doing is not reasonable ... Accordingly, if there is a cause other than a change of direction, I hereby request a full hearing on the causes and hereby request the public documents supporting said cause.”[2] Clearly, Ackley requested a hearing only if there were “charges” against him for which he might defend and not to contest the City’s discretionary termination. ,
The City’s reasons for terminating Ack-ley never changed. Comments from individual members of a council, however hurtful, do not reflect the official action of the City. It is the motion, the second, and the majority vote that determines the City’s actions. No charges were ever leveled against Ackley and. the City stood and stands ready and willing to fulfill its obligation to Ackley on the severance package included in the contract.
Since this was an “at will” employment contract and Ackley was terminated, not for cause but based solely on the discretion of the City to go in a different direction with a new city manager (and to pay the consequence related thereto by meeting its severance obligations), requiring a hearing on charges was neither contemplated by the employment contract nor required by the charter.

. Hence, if the City wished to avoid the consequence of the severance provision, and if it had the grounds, it could charge the city manager with confiscating public property or failing to perform his duties by not regularly coming to work or refusing to attend obligatory meetings. If the city manager wished to contest the charges, he would, of course, be entitled to a hearing. Whether the city manager would receive severance benefits would depend on the outcome of the hearing. But to require a hearing on the City's exercise of its discretion to "go in a different direction" would be meaningless.

. The conditional nature of Ackley’s request for a hearing is also revealed by his follow-up letter of May 15, 1999: 'T am on record requesting a hearing if the Council maintains their innuendo of ‘cause’.” [Emphasis added.] Since there is nothing in the record to suggest that the City ever maintained that there was cause to terminate Ackley, both “demands” by Ackley were conditional.